*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0099P (6th Cir.)
File Name: 02a0099p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

CSX Transportation, Inc.,
       *Plaintiff-Appellee,*

    *v.*

City of Plymouth,
        *Defendant,*

Jennifer M. Granholm,
Attorney General of the State
of Michigan,
      *Defendant-Appellant.*

No. 00-1552

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 98-73615—Nancy G. Edmunds, District Judge.

Argued: January 30, 2002

Decided and Filed: March 21, 2002

Before: RYAN and GILMAN, Circuit Judges; POLSTER,
District Judge.*

————————————————

*The Honorable Dan A. Polster, United States District Judge for the
Northern District of Ohio, sitting by designation.

————————————

**COUNSEL**

**ARGUED:** Michael G. Frezza, ASSISTANT ATTORNEY GENERAL, Detroit, Michigan, for Appellant. George F. Pappas, VENABLE, BAEJTER & HOWARD, Baltimore, Maryland, for Appellee. **ON BRIEF:** Michael G. Frezza, ASSISTANT ATTORNEY GENERAL, Detroit, Michigan, Thomas L. Casey, OFFICE OF ATTORNEY GENERAL, APPELLATE DIVISION, Lansing, Michigan, for Appellant. George F. Pappas, Vicki Margolis, Mitchell Y. Mirviss, Kevin B. Collins, VENABLE, BAEJTER & HOWARD, Baltimore, Maryland, Jack O. Kalmink, CLARK HILL, Detroit, Michigan, for Appellee. Michael D. Eagen, DINSMORE & SHOHL, Cincinnati, Ohio, for Amicus Curiae.

————————————

**OPINION**

————————————

RONALD LEE GILMAN, Circuit Judge. Subject to certain exceptions, a Michigan statute prohibits trains from continuously blocking grade crossings for more than five minutes. CSX Transportation, Inc. (CSXT), a railroad company that operates interstate trains throughout Michigan, has been repeatedly fined for violating this statute. Claiming that the Michigan statute is preempted by federal law and that it unduly burdens interstate commerce in violation of the Commerce Clause of the United States Constitution, CSXT filed a lawsuit seeking declaratory and injunctive relief. CSXT subsequently filed a motion for summary judgment. The City of Plymouth and the Attorney General of Michigan replied with cross-motions for summary judgment. In granting CSXT's motion for summary judgment and denying the defendants' cross-motions, the district court held that the state statute is preempted by both the Federal Railroad Safety Act and the Interstate Commerce Commission Termination Act, and that it violates the Commerce Clause. For the

The Attorney General, among other arguments, challenges the district court's analysis on this issue, contending that a determination of whether the Michigan statute "directly" regulates railroads is no longer the proper test for deciding if a state statute violates the Commerce Clause. Relying on *Edgar v. Mite Corp.*, 457 U.S. 624 (1982), the district court stated that "in no event can a state law directly regulate interstate commerce." *Id*. at 640 ("The Commerce Clause . . . permits only *incidental* regulation of interstate commerce by the States; direct regulation is prohibited.") (emphasis in original). This court has recently noted, however, that "[a]lthough there have been periods in our legal history when the constitutionality of state [law] burdening interstate commerce was thought to turn on the answer to the question whether the burden was 'direct' or 'indirect' . . . , that test now appears to have been repudiated . . . ." *Maharg, Inc. v. Van Wert Solid Waste Mgmt. Dist.*, 249 F.3d 544, 549 (6th Cir. 2001) (citing *Quill Corp. v. North Dakota*, 504 U.S. 298, 310 (1992), and *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 281 (1977)).

The proper standard for determining whether a nondiscriminatory state statute violates the Commerce Clause is whether the burden the statute imposes on interstate commerce is "clearly excessive in relation to the putative local benefits." *C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 390 (1994). As a result, the district court erred in concluding that the Michigan statute violates the Commerce Clause without first determining whether the burden the statute imposes on interstate commerce is "clearly excessive in relation to the putative local benefits." No remand is necessary on this issue, however, because of our agreement with the district court that the Michigan statute in question is preempted by the FRSA.

### III.    CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.

reasons set forth below, we **AFFIRM** the judgment of the district court.

### I.    BACKGROUND

#### A.    Factual background

In 1994, Michigan enacted a statute that prohibits trains from continuously blocking grade crossings for more than five minutes, subject to two exceptions. Mich. Comp. Law Ann. § 462.391. Pursuant to the statute, a train may block a grade crossing for more than five minutes only if: (1) the train is continuously moving in the same direction at not less than 10 miles per hour, in which case it can block the crossing for no longer than seven minutes, or (2) the railroad can show that the violation was the result of a verifiable accident, mechanical failure, or unsafe condition. Mich. Comp. Laws Ann. § 462.391(1)(a)-(b). Each violation of the statute results in a fine of $500. CSXT does not dispute that its trains have frequently blocked grade crossings in Plymouth and other municipalities in violation of the statute. Due to these violations, CSXT has been issued more than 892 citations, with potential fines exceeding $446,000.

#### B.    Procedural background

CSXT filed a complaint against Plymouth in the United States District Court for the Eastern District of Michigan, claiming that the above-mentioned Michigan statute is preempted by federal statutes and regulations and that it unduly burdens interstate commerce in violation of the Commerce Clause. Jennifer M. Granholm, Attorney General of the State of Michigan, intervened to defend the state statute. All parties eventually moved for summary judgment. In granting CSXT's motion and denying the defendants' cross-motions, the district court concluded that the state statute was preempted by both the Federal Railroad Safety Act (FRSA), 49 U.S.C. §§ 20101-20153, and the Interstate Commerce Commission Termination Act (ICCTA), 49 U.S.C. §§ 10101-16106, and that it violates the Commerce Clause. U.S. Const. art. I § 8, cl. 3. This timely appeal by the

Attorney General of Michigan followed, with Plymouth electing not to separately appeal.

## II.  ANALYSIS

### A.  Standard of review

We review de novo the district court's grant of summary judgment. *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000). Summary judgment is proper where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The judge is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists only where there is sufficient "evidence on which the jury could reasonably find for the [nonmoving party]." *Id*. at 252.

### B.  Federal preemption

#### 1.  *Federal Railway Safety Act*

##### a.  The statute

Congress enacted the FRSA in 1970 to "promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. The FRSA gives the Secretary of Transportation the power to "prescribe regulations and issue orders for every area of railroad safety supplementing laws and regulations in effect on October 16, 1970." 49 U.S.C. § 20103(a). In order to promote the national uniformity of railroad regulation, Congress included an express preemption provision:

Laws, regulations, and orders related to railroad safety shall be nationally uniform to the extent practicable. A

cover the speed at which trains may travel and the stops that trains must make to test their air brakes. The Supreme Court, for example, has held that the speed limits set by 49 C.F.R. § 213.9 "should be understood as covering the subject matter of train speed with respect to the track conditions, *including the conditions posed by grade crossings*." *Easterwood*, 507 U.S. at 675 (emphasis added). These federal regulations thus "substantially subsume the subject matter of the relevant state law." *Id*. at 664. Because the Secretary of Transportation has already prescribed regulations covering the subject matter of the state statute, the first savings clause of the FRSA's express preemption provision does not apply to the Michigan statute. We therefore affirm the district court's holding that the Michigan statute is preempted by the FRSA.

#### 2.  *Interstate Commerce Commission Termination Act*

Because we have concluded that the district court did not err in holding that the Michigan statute is preempted by the FRSA, we decline to address the question of whether the state law is also preempted by the ICCTA.

### C.  Commerce Clause

The district court also concluded that the Michigan statute violates the Commerce Clause. Through the Commerce Clause, Congress is given the power to "regulate Commerce with foreign Nations, and among the several States . . . ." U.S. Const. art. I § 8, cl. 3. The constitutionality of a state law affecting interstate commerce turns on "two lines of analysis: first, whether the ordinance discriminates against interstate commerce, and second, whether the ordinance imposes a burden on interstate commerce that is clearly excessive in relation to the putative local benefits." *C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 390 (1994) (internal citation and quotation marks omitted). After concluding that the state statute directly regulates railroads and forces them to make substantial changes in their operating procedures, the district court held that the Michigan law violates the Commerce Clause.

federal regulation to be identical to the state statute for preemption to apply.

The Michigan statute reads as follows:

(1) A railroad shall not permit a train to obstruct vehicular traffic on a public street or highway for longer than 5 minutes at any 1 time, except the obstruction shall not be considered a violation under the following circumstances:
　(a) If the train is continuously moving in the same direction at not less than 10 miles per hour for not longer than 7 minutes.
　(b) If the railroad can show that the incident occurred as a result of a verifiable accident, mechanical failure, or unsafe condition.

Mich. Comp. Laws Ann. § 462.391. We will accept for the sake of argument the Attorney General's contention that the subject matter of this statute is "the time that trains may block highway traffic." This does not further the Attorney General's argument, however, because the amount of time a moving train spends at a grade crossing is mathematically a function of the length of the train and the speed at which the train is traveling. The Michigan statute would thus require CSXT to modify either the speed at which its trains travel or their length, and would also restrict CSXT's performance of federally mandated air brake tests.

To the extent that the Michigan statute would force CSXT to modify the length of its trains, the Supreme Court long ago held that state regulation of train length violates the Commerce Clause. *S. Pac. Co. v. Arizona*, 325 U.S. 761 (1945) (holding that the safety benefits of limiting the length of trains is outweighed by the resultant burden upon interstate commerce); *see also R.J. Corman R.R. Co. v. Palmore*, 999 F.2d 149, 153 (6th Cir. 1993) (holding that a state statute can be preempted by a federal statute even if there is no federal regulation directly addressing the subject matter of the state statute). There are also numerous federal regulations that

State may adopt or continue in force a law, regulation, or order related to railroad safety until the Secretary of Transportation prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety when the law, regulation, or order—
　(1) is necessary to eliminate or reduce an essentially local safety hazard;
　(2) is not incompatible with a law, regulation, or order of the United States Government; and
　(3) does not unreasonably burden interstate commerce.

49 U.S.C. § 20106. The FRSA therefore permits state regulation related to railroad safety only if: (1) the Secretary of Transportation has not yet regulated the subject matter of the state regulation (the first savings clause), or (2) the regulation (a) is necessary to eliminate an essentially local hazard, (b) does not conflict with federal law, and (c) does not unreasonably burden interstate commerce (the second savings clause).

### b.    *Presumption of nonpreemption*

The district court relied on the Supreme Court's declaration in *United States v. Locke*, 529 U.S. 89 (2000), that "an 'assumption' of nonpre-emption is not triggered when the State regulates in an area where there has been a history of significant federal presence." *Id*. at 108. Although *Locke* involved ships, the district court reasoned that the application of this principle was not limited to maritime law. After finding that Congress has created "an extensive federal statutory and regulatory scheme" with regard to the nation's railroad system, the district court held that the Michigan statute was not entitled to a presumption of validity.

The Attorney General claims that the district court erred in not beginning with the presumption that the Michigan statute is valid. In particular, the Attorney General claims that *Locke* is inapposite because it was a maritime case concerning the

regulation of ships in a harbor. Furthermore, the Attorney General contends that an earlier Supreme Court case, *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658 (1993), stands for the proposition that because grade crossings are traditionally governed by state law, a court should be reluctant to find federal preemption in this area. Finally, the Attorney General cites this court's recent decision in *Tyrrell v. Norfolk S. Ry. Co.*, 248 F.3d 517 (6th Cir. 2001), in support of her interpretation of *Easterwood*.

We acknowledge that *Tyrrell*, which was decided after the district court opinion was rendered, interpreted *Easterwood* as holding "that a presumption against federal preemption is embodied in the saving clauses of 49 U.S.C. § 20106." *Tyrrell*, 248 F.3d at 524 (holding that the district court erred in concluding that the FRSA preempted an Ohio regulation governing the distance between railroad tracks). But that presumption is not irrebuttable. *Id.* ("To prevail on a claim that federal regulations are preemptive, a party must establish more than that they touch upon or relate to the state regulation's subject matter. Instead, preemption will lie only if the federal regulations *substantially subsume* the subject matter of the relevant state law.") (internal citation and quotation marks omitted) (emphasis in original). The question then, as discussed in the following subsection, is whether either of the FRSA's savings clauses applies in the context of this case. Because we conclude that neither of the savings clauses applies, the district court's error in deciding that the Michigan statute was not entitled to a presumption of validity is harmless.

### c.    *Application of the savings clauses*

With regard to the first savings clause, the district court found that the subject matter of the state statute necessarily involves the regulation of train speed, train length, and air brake tests. The district court concluded that these areas constitute the subject area of the state statute because, by limiting the amount of time a moving train can block a grade crossing, the Michigan statute has the inevitable effect of

regulating a train's speed, length, and performance of air brake testing. It then examined the following provisions to determine whether the Secretary of Transportation has promulgated regulations that cover the subject matter of the state statute: 49 C.F.R. §§ 213.9 and 213.307 (maximum speed limits for different classes of track); § 213.57 (maximum speed limits for different curves); Pt. 232.12-13 App. B (air brake testing). After finding that these federal regulations were promulgated to cover the subject matter of the state statute, the district court concluded that the first savings clause of the FRSA's express preemption provision does not apply to the Michigan statute.

With regard to the second savings clause, the district court pointed out that, because the Michigan law is applicable to the entire state, the statute is not concerned with "eliminat[ing] an essentially local hazard." The district court therefore concluded that the second savings clause of the FRSA's express preemption provision is also inapplicable to the Michigan statute.

On appeal, the Attorney General argues that the district court erred in characterizing the subject matter of the state statute. The Attorney General contends that, utilizing the plain-meaning test, the subject matter of the statute is "the time that trains may block highway traffic." Arguing that the subject matter of federal regulations should be narrowly construed, the Attorney General thus concludes that there are no federal regulations that cover the subject matter of the state statute. As a result, the Attorney General argues that the Michigan statute is valid under the first savings clause of the FRSA's express preemption provision. The Attorney General does not contend that the statute satisfies the second savings clause of § 20106.

In *CSX Transportation, Inc. v. Easterwood*, 507 U.S. 658, 664 (1993), the Supreme Court held that preemption under the FRSA occurs "only if the federal regulations substantially subsume the subject matter of the relevant state law." As the district court pointed out, it is therefore unnecessary for the